UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHARLES ROBERT DIPLOCK, )
)
        *Plaintiff* )
)
v. ) No. 1:14-cv-111-JHR
)
CAROLYN W. COLVIN, )
*Acting Commissioner of Social Security,* )
)
        *Defendant* )

***MEMORANDUM DECISION***[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found that the plaintiff had no severe impairments. The plaintiff seeks remand on the basis that the finding was erroneous with respect to both his physical and mental impairments. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 4-6. Because the administrative law judge's determination is supported by substantial evidence, I affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

requirements of the Social Security Act through June 30, 2012, Finding 1, Record at 15; that he had medically determinable impairments of back pain, neck pain, knee pain, mood disorder, and alcohol abuse, Finding 3, *id.*; that he did not have an impairment or combination of impairments that had significantly limited, or was expected to significantly limit, his ability to perform work-related activities for 12 consecutive months and, therefore, did not have a severe impairment or combination of impairments, Finding 4, *id.* at 16; and that he, therefore, had not been disabled from January 1, 2007, his alleged onset date of disability, through the date of the decision, November 30, 2012, Finding 5, *id.* at 19. The Appeals Council declined to review the decision, *id.* at 6-8, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the

individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Physical Impairments

The administrative law judge found:

> The [plaintiff] alleges back and neck pain. Patient notes with chiropractor John M. Laney, D.C. in May 2012 state the [plaintiff's] x-rays indicated moderate cervical spondylosis from C3 through C6 and hypertrophy from C3 to C6. However, the original x-ray report is not in evidence and this appears to be based on the chiropractor's evaluation. A chiropractor is not an acceptable medical source for the purpose of establishing a diagnosis, under the Regulations. The [plaintiff] reported neck pain for the past five days, but then on May 7, he reported improvement and denied having headaches. On March 23, 2012, he reported low back pain and left side pain without radicular symptoms, and reported the pain was intermittent. Despite reported pain, [his] activities indicate few related functional limitations. He reported in May 2012 he rides a bicycle between three and seven times per week for exercise. The records and the [plaintiff's] activities do not support functional limitations.
>
> In a December 2010 consultative exam, the [plaintiff] reported that he has intermittent back pain that improves with chiropractic adjustments. In exam notes, Edward Harshman, M.D. also observed that he had fine crepitus in both knees. However, in exam notes, he observed the [plaintiff] put on and took off laced high-top shoes easily, had normal gait, including heel, toe, and tandem, and could squat without difficulty to 135 degrees and stand unaided. His strength in the upper and lower limbs was normal. Dr. Harshman opined that [he] was not restricted in his ability to sit, stand, walk or lift and carry. The [plaintiff] has never had surgery, injections for pain, or physical therapy related to a back or knee impairment.

Record at 17-18 (citations omitted).

The administrative law judge gave Dr. Harshman's opinion "some limited weight." *Id*. at 18. He explained that Dr. Harshman's finding that the plaintiff had no exertional limitations supported the determination that the plaintiff's impairments were nonsevere. *See id.* However, he gave little weight to Dr. Harshman's opinion that the plaintiff could rarely crouch and occasionally climb ladders, which he deemed unsupported by diagnostic testing, seemingly based on mild

3

crepitus, and inconsistent with the plaintiff's reports that he frequently rode a bicycle and walked more than one mile to get to his hearing. *See id*. He noted that the plaintiff had never had surgery, shots for pain, or other treatment. *See id*. He added that the plaintiff had testified that he had injured his knee at age 23 but was able to return to work, and the record did not support work-related functional limitations due to a knee impairment. *See id*.

He accorded significant weight to the opinions of agency nonexamining consultants that the plaintiff's impairments were nonsevere, deeming those opinions consistent with the medical evidence and the plaintiff's activities. *See id*. at 18. With respect to physical impairments, he evidently referred to the opinion of Donald Trumbull, M.D., dated December 29, 2010, finding no severe physical impairments. *See id*. at 664.

The plaintiff complains that the administrative law judge erroneously disregarded Dr. Laney's treatment notes on the basis that he was not an acceptable medical source for the purpose of establishing the existence of a medically determinable impairment. *See* Statement of Errors at 4-5; 20 C.F.R. §§ 404.1513(a) and 416.913(a) (chiropractors not among acceptable medical sources). He contends that, because the administrative law judge determined that his back, neck, and knee pain were medically determinable impairments, he could and should have taken Dr. Laney's notes into consideration for purposes of establishing those impairments' severity. *See* Statement of Errors at 5; *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (commissioner "may also use evidence from other sources [such as chiropractors] to show the severity of [a claimant's] impairment[s] and how it affects [his or her] ability to work"). He adds that his report that he rode a bicycle several times a week did not, by itself, constitute substantial evidence that his back, neck, and knee pain were nonsevere. *See* Statement of Errors at 5.

4

The commissioner replies that the administrative law judge merely correctly noted that Dr. Laney was not an acceptable medical source for purposes of establishing a medically determinable impairment and did not disregard his treatment notes but, rather, took them into consideration. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 5. She argues that the administrative law judge's consideration of the plaintiff's bicycling should not be considered in isolation, noting that he pointed to other evidence that the plaintiff's physical impairments were nonsevere, including Dr. Trumbull's opinion, the Harshman finding that the plaintiff had no exertional limitations, and the plaintiff's testimony that he had walked more than a mile to attend his hearing. *See id.* at 5-6. Finally, she notes that the plaintiff points to no physical RFC opinion more favorable to his claim than those on which the administrative law judge relied and fails to establish that the raw medical evidence would have compelled a more favorable outcome. *See id*. at 6-7; *see also Courtney v. Colvin*, Civil No. 2:13-cv-72-DBH, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014) ("[T]he plaintiff fails to identify the specific limitations imposed by these impairments . . . that would have necessarily affected the outcome of her application for benefits, a basic requirement at this level of review.") (citation omitted).

I find no error. The administrative law judge took into consideration Dr. Laney's notes, as well as other evidence of record that included the plaintiff's level of activity and Drs. Trumbull's and Harshman's opinions, in concluding that the plaintiff's physical impairments were nonsevere. This evidence, in totality, constituted substantial evidence in support of the determination. In any event, as the commissioner argues in the alternative, *see* Opposition at 6-7, the plaintiff fails to demonstrate that the evidence compelled a more favorable finding with respect to his physical impairments.

## B. Mental Impairments

In deeming the plaintiff's mental impairments nonsevere, the administrative law judge stated:

> [T]he medical evidence of record indicates only mild limitations, even with [the plaintiff's] history of alcohol abuse. [He] testified that he has been sober for three weeks and is attending Alcoholics Anonymous, but reported no improvement of his depression and anxiety. In a consultative psychological evaluation in May 2011, psychologist Kevin L. Polk, Ph.D. only assessed him with alcohol abuse, and assigned him a GAF [Global Assessment of Functioning score] of 55 due to alcohol use.[2] Exam notes stated he appeared anxious, but Dr. Polk stated that it seemed to be due to substance abuse issues. His memory was within normal limits, insight and judgment intact, speech quality was good, motor activity within normal limits, and he was oriented.
>
> [He] was evaluated for substance abuse at Crisis & Counseling Centers Inc., on October 17, 2012 and reported drinking three 40-ounce beers the night before and smoking marijuana daily. He reported seeing nurse practitioner Russ Kimball, PA-C, for ADHD [attention deficit hyperactivity disorder] and bipolar disorder. In October 31, 2012, progress notes stated he continued to drink alcohol. On November 7, he again reported drinking three 40-ounce beers over the weekend and continued to refuse to go to detoxification.
>
> In May 2012, family practitioner Michael Szela, M.D. assessed the [plaintiff] with ADHD after he tested positive after [he] completed a[n] 18-question symptom checklist and [he] reported a prior diagnosis of ADHD. Dr. Szela prescribed Concerta. However, the [plaintiff] reported no improvement and this medication was not included in a recent medication report. The record does not include a diagnosis by a psychologist or psychiatrist. In an assessment by physician's assistant Russell Kimball, PA-C, he diagnosed the [plaintiff] with ADHD and anxiety in November 2010. However, a physician's assistant is not an acceptable medical source for the purpose of establishing a medically determinable impairment under the Regulations. The records with Crisis & Counseling Centers Inc. do not include exam notes by a psychiatrist or psychologist.

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted).

Record at 18 (citations omitted).

The administrative law judge found that the plaintiff had mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation of extended duration. *See id*. at 19. With respect to concentration, persistence, or pace, he explained:

> In a consultative exam with Dr. Polk, the [plaintiff's] memory was within normal limits and his concentration was mildly impaired. He reported completing 11th grade and earning a GED. He manages his own finances and cares for a duplex where he lives. Dr. Polk attributed most of his mild limitations to alcohol abuse. The [plaintiff] reported he no longer uses alcohol and is attending AA.

*Id*. (citations omitted).

The plaintiff complains that the administrative law judge erroneously rejected Dr. Szela's diagnoses of ADHD, anxiety, and depression on the basis that only a psychologist or psychiatrist can establish medically determinable mental impairments and compounded that error by disregarding evidence bearing on the severity of those impairments from Kimball. *See* Statement of Errors at 5-6. He contends that the finding that he had only mild limitations in concentration, persistence, or pace is unsupported by substantial evidence, including that from Dr. Szela, nurse practitioner Kimball, and an agency field office representative who noted in March 2011 that, in six years, he/she had never encountered a claimant who was so difficult to keep focused. *See id*. at 6.

The commissioner concedes that the administrative law judge erred in rejecting Dr. Szela's diagnoses on the basis that he was not a psychologist or psychiatrist. *See* Opposition at 7-8. However, she asserts that the plaintiff makes no showing that the error was prejudicial. *See id*. at 8. She argues that a mere diagnosis says nothing about the severity of a condition and that the plaintiff does not demonstrate that the diagnoses of depression and anxiety were not effectively

captured in the medically determinable impairment of mood disorder. *See id*. She adds that, although Dr. Szela diagnosed ADHD in May 2012, Dr. Polk had specifically ruled it out in May 2011, and the plaintiff did not attempt to demonstrate that his mental functioning significantly worsened during that interval. *See id*.[3]

The commissioner further notes that the plaintiff fails to demonstrate that anything in Kimball's notes would have compelled an outcome more favorable to him, or that his mental functioning improved significantly between November 2010, when Kimball assessed him with ADHD, and May 2011, when Dr. Polk specifically ruled it out. *See id*. at 8-9; *Courtney*, 2014 WL 320234, at *4.

The commissioner contends that the finding of only mild limitations in concentration, persistence, or pace is supported by substantial evidence in the form of the Polk opinion. *See* Opposition at 10. She asserts that the administrative law judge had no obligation to discuss the notes of a field office representative. *See id*. at 10-11.

At oral argument, the plaintiff's counsel contended that the error in failing to find a medically determinable impairment of ADHD and take into account evidence from Kimball bearing on its severity was not harmless, pointing to the testimony of a vocational expert present at hearing that a hypothetical claimant who was "off task 20 percent of the workday" would not be able to perform any work. Record at 54. He added that the administrative law judge wrongly

---

[3] On mental status examination, Dr. Polk found that the plaintiff's "memory for recent and remote events was good[,]" "[h]e was successful at proverbs and similarities[,]" and his "[i]mmediate recall (remembering number series) was within normal limits." Record at 706. He noted that the plaintiff's "paperwork indicated possible dyslexia, and he indeed reported some reversing problems[,]" but Dr. Polk "was not able to determine if he indeed suffered from dyslexia." *Id*. at 708. He added, "While ADHD was reported in his paperwork, he did not report a history consistent with that diagnosis." *Id*. He diagnosed the plaintiff solely with alcohol abuse and noted that he "could understand and remember instructions for a wide variety of work tasks[,]" "[h]is ability to sustain concentration was mildly impaired during this interview by anxiety[,]" and his "[a]bility to persist at work tasks would probably be intact when sober, but impaired while intoxicated." *Id*. at 708.

8

failed to consider whether his mental impairments, including alcohol abuse, were severe, instead treating his alcohol abuse as a factor cutting against a finding of severity.

To begin, these arguments could have been, but were not, raised in the plaintiff's statement of errors. Therefore, they are waived. *See, e.g.*, *Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

In any event, even taking these belated arguments into account, I conclude that reversal and remand are unwarranted.

While the administrative law judge erred in rejecting the ADHD diagnosis on the basis that Dr. Szela was not a psychologist or psychiatrist, this was not his sole basis for rejecting it. He noted that examining consultant Dr. Polk had found only one impairment, alcohol abuse, and little by way of deficits in concentration, persistence, or pace. *See* Record at 19; *see also id*. at 708 (observations of Dr. Polk that the plaintiff "could understand and remember instructions for a wide variety of work tasks[,]" "[h]is ability to sustain concentration was mildly impaired during this interview by anxiety[,]" and his "[a]bility to persist at work tasks would probably be intact when sober, but impaired while intoxicated"). He also noted that the plaintiff had reported no improvement with Concerta, which Dr. Szela had prescribed for ADHD, and did not list it in a recent medication report. *See id*. at 18; *see also id*. at 568, 736.

In any event, the testimony of the vocational expert on which the plaintiff's counsel relied at oral argument does not demonstrate prejudice. The plaintiff's counsel identified no basis in the record for the assertion that his client would be off-task 20 percent of a workday. He argued that,

9

for purposes of demonstrating error at Step 2, it was sufficient that the hypothetical restriction was consistent with Dr. Szela's ADHD diagnosis and that Dr. Szela need not have laid it out in a residual functional capacity opinion. He cited no authority for this proposition, and it flies in the face of the court's standard for the showing that must be met. *See, e.g., LaBonte v. Astrue,* Civil No. 09-358-P-S, 2010 WL 2024895, at * 3 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 17, 2010) ("[I]n this district, assuming that an error has been made at Step 2 in failing to find a particular impairment to be severe, that error is uniformly considered harmless, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

With respect to the issue of alcohol abuse, even assuming *arguendo* that the administrative law judge misconstrued the Polk report in deeming the plaintiff's limitations in concentration, persistence, or pace mild even when the plaintiff was abusing alcohol, any error could not have been outcome-determinative as a matter of law. Had the administrative law judge ultimately found the plaintiff disabled, he would have been obliged to determine whether alcohol abuse was material to the finding of disability, that is, whether the plaintiff would not be disabled if he ceased using alcohol. *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). Dr. Polk was clear that, in his opinion, the active abuse of alcohol was the only cause of the plaintiff's limitations. It, therefore, would have been material.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 2nd day of January, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

10